**\*\* NOT FOR PRINTED PUBLICATION \*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| FLAME S.A., | § | |
| | § | |
|     *Plaintiff,* | § | Civil Action No. 1:10-cv-278 |
| | § | |
| v. | § | JUDGE RON CLARK |
| | § | |
| M/V LYNX, her engines, freights, apparel, | § | |
| appurtenances, tackle, etc. in rem, | § | |
| | § | |
|     *Defendant.* | § | |

### ORDER GRANTING TMM'S MOTION TO INTERVENE AND REQUEST FOR EQUITABLE RELIEF

Before the court is the Motion to Intervene and Request for Equitable Relief of Transportacion Maritima Mexicana S.A. de C.V. ("TMM"). After considering the applicable law, as well as the parties' motion papers and arguments on the record at the June 2 and June 4 hearings, the court grants the motion to intervene and for other relief as discussed below.

**I.  Background**

The M/V Lynx is a chemical tanker built in 2008 and registered in the Republic of Marshall Islands, capable of carrying a variety of liquid petroleum products. Importantly for this Order, however, is that the Lynx is not authorized by the United States Government to engage in coastwise trade, as defined under 46 U.S.C. § 55101, *et seq*. In 2009, TMM entered into a Charter Party agreement with Camela Navigation, Inc which would allow TMM (the vessel charterer) to provide ocean carriage of cargo to TMM's customers aboard the Lynx.

The Lynx arrived in Houston, Texas on May 5, 2010 while under charter to TMM, where it loaded a cargo of orthoxylene under a bill of lading. The bill of lading called for the orthoxylene cargo to be discharged at the port of Altamira, Mexico. The Lynx then departed Houston, Texas and sailed to Port Arthur, Texas where it was to load an additional cargo also destined for Mexico.

On May 13, 2010, Plaintiff Flame S.A. filed an *in rem* action against Defendant M/V Lynx pursuant to Supplemental Admiralty Rule C in the Eastern District of Texas. The basis for Flame's claim was a foreign judgment obtained against Primera Maritime (Hellas) Ltd. and subsequently recognized by the United States District Court for the Southern District of New York in the amount of $5,554,271.36. The vessel was arrested the same day, following issuance of a warrant by the court.

On May 16, 2010, Camela filed a motion to vacate the Complaint and arrest warrant. In response, Flame amended its Complaint, citing instead Rule B of the Supplemental Rules of Civil Procedure, and alleging that Primera was the "alter ego" of Camela and that the corporate veil should be pierced. A preliminary hearing was held on May 18, 2010, at which time the court set Camela's Motion to Vacate for Hearing on June 2, 2010. During the May 18 hearing, the court inquired into the status of the cargo still on board the Lynx, and the parties informed the court that the cargo was not under arrest and could be offloaded at any time.

At that hearing, Camela urged rapid disposition by the court, in part because of the cargo that could or should not be stored indefinitely. At the time, it was suggested that the cargo could not be offloaded because of concerns by the local facility that it would be "stuck" with an arrested vessel clogging its docks. Since both parties agreed that the cargo was not under arrest,

the court instructed counsel to quickly determine how that issue could be resolved, to include any suggestions for any order needed to assure the local facility that the cargo could be offloaded and the vessel would not remain in their facility.

The night before the June 2, 2010 hearing, TMM filed a motion to intervene. The court was informed that there was no longer any problem with the local facility. The court was also told that TMM's cargo was orthoxylene, and that it was important to oil refining in Mexico that the orthoxylene be delivered as soon as possible. Flame and Camela again agreed that the cargo was not under arrest. The Lynx currently remains at anchorage, the cargo of orthoxylene still within her tanks.

## II. Discussion

On June 1, 2010, TMM filed its Opposed Motion in Intervention and Request for Equitable Relief. TMM appeared at the June 2, 2010 hearing and informed the Court of the difficulties it faced in offloading the cargo and the penalties it faced from the United States Customs and Border Protection Agency ("CBP"). TMM informed the court that the CBP advised that discharging the cargo in Port Arthur would constitute a violation of the Jones Act, which would either expose the cargo to: (1) being seized and forfeited by the United States Government, or (2) to the imposition of a penalty against TMM in an amount equal to the value of the cargo. This comports with the statutory text found in 46 U.S.C. § 55102(c). TMM also informed the court that it does not own the cargo, but is responsible for transporting it to its ultimate destination and receivers in Mexico.

The court does not opine on, or making findings about, an administrative matter that has not even commenced. The court could not issue an order enjoining the CBP from issuing a

penalty against TMM should TMM discharge the cargo to another vessel for transshipment to Mexico, because it lacks subject matter jurisdiction to decide pre-enforcement penalties assessed by the CBP.  *See, e.g., Nippon Miniature Bearing Corp. v. Weise*, 230 F.3d 1131 (9th Cir. 2000).

However, the court must deal with a very complex set of issues, including a determination of whether the vessel should be released, which necessarily requires analysis of whether English law controls, the effect to be given to the judgment of the United States District Court for the Southern District of New York, the potential effects of possible Liberian proceedings, and whether the evidence contained in the hundreds of exhibit pages supports a decision to pierce the corporate veil.  This will take some time.  The presence of the orthoxylene is a needless complication of the situation.  Accordingly, the court makes the following findings and rulings.[1]

It serves no purpose to continue to require the United States Marshal to maintain custody of a cargo of orthoxylene, which is flammable in the liquid and vapor states.  While stable under normal conditions of use and storage, there is an increased risk of fire or explosion when brought into contact with high temperatures or strong oxidizers.  Acute exposure when inhaled can cause a host of symptoms, from central nervous system depression to impaired short term memory.  When in contact with the skin, irritation, redness, and burning may occur.  Suggested storage is

---

[1]The court rejects Camela's argument that this is an advisory opinion.  The court is setting out the determinations it has made in deciding what action to take with respect to this cargo.  Such a position is expected of a district court so that any appellate court reviewing the decision can understand the basis for this court's ruling.  Whether these findings are used in any future administrative or judicial review of whether penalties should be assessed against TMM will be determined at those proceedings.

in a cool, dry, well-ventilated area, out of direct sunlight and away from all ignition sources. Storage facilities should ideally be made out of fire-resistant materials.[2]

The court finds that removal of the cargo is in the interests of justice, in that it allows TMM to move its cargo. No party has argued, and there is no evidence, that TMM is any way at fault in the dispute between Flame and Camela.

The court further finds that removal of the potentially hazardous cargo will reduce the burden on the United States Marshal, and will reduce the danger to the Lynx and security personnel assigned by the United States Marshal to guard the vessel inherent in having such cargo maintained in an unmanned vessel for an indeterminate period of time.

The court recognizes the importance of properly enforcing applicable Jones Act provisions and accompanying regulations.  In review of the applicable Code of Federal Regulations governing fines and penalties the CBP may enforce, the court notes an exception that allows for the remittance by the CBP of any penalty assessed for violations of coastwise laws when a vessel is in distress.  19 C.F.R. § 171.11(c).  Although the Lynx was not in mechanical distress at the time it was seized in this case, the effect of the seizure placed TMM in the same position as if the Lynx had experienced a serious mechanical problem prohibiting it from sailing on to Mexico.  Moreover, the court notes that had the Lynx not been seized, the cargo aboard the Lynx would have already reached its original destination in Mexico where the orthoxylene cargo would have been delivered to its ultimate receiver.  Instead, the cargo is currently still aboard the

---

[2]*See, e.g.*, Material Safety Data Sheet: Ortho-xylene, Caledon Laboratory Chemicals, *available at* http://www.caledonlabs.com/en/products/results.php?product_name=ortho-xylene (last visited June 3, 2010).

Lynx's tanks.

Camela's argument that TMM does not have standing to intervene or request relief because it does not own the cargo is not well-taken. TMM concedes that it does not own the cargo, but is in fact the bailor. Camela suggests that the correct party in interest is the cargo owner, and that this is the party which should request relief. However, TNN is the chartering party of the Lynx. Mot. Intervene, Ex. A, at 1. A party to the contract of carriage has standing to sue for recovery of the value of the cargo. *See, e.g., United States v. Central Gulf Lines, Inc.*, 699 F.2d 243, 245 (5th Cir. 1983).

Further, as the court has already pointed out, it lacks subject matter jurisdiction to decide pre-enforcement penalties assessed by the CBP. This Order is intended only to solve the very real practical problem of a cargo of orthoxylene sitting in an unmanned vessel in this District, when it can be offloaded and set to Mexico, before a deputy Marshal, a security guard, or any other person or property is injured by the cargo. Securing movement of the cargo should make ultimate disposition of the vessel easier if the court continues the attachment, and reduce delay in delivering of the cargo if the court vacates the attachment. Finally, the owner of the cargo, whom no one has argued has any fault in this matter, would receive its property.

### III. Conclusion

Transportation Maritima Mexicana, S.A. de C.V. will be permitted to intervene in this case. The court authorizes the United States Marshal or Custodian of the M/V Lynx to release the cargo of orthoxylene on board the Lynx to Transportacion Maritima Mexicana, S.A. de C.V., and allow it to be transshipped so as to ultimately proceed to its original and final destination in Mexico.

IT IS THEREFORE ORDERED that Transportacion Maritima Mexicana S.A. de C.V.'s Motion to Intervene and Request for Equitable Relief [Doc. # 21] is GRANTED.

So **ORDERED** and **SIGNED** this **4**   day of **June, 2010.**

_____
Ron Clark, United States District Judge